March 27.
JUDGE CARR.
In this case, I had written a long and la-boured opinion, some time ago, which, on recent discussions with my brethren, I am induced to think was wrong in the main. I have, therefore, abandoned it, and shall content myself with a few brief remarks, referring generally to the opinions of my brothers Cabell and Coalter, which, in my mind, take a correct view of the case.
The Declaration was specially demurred to, because the breaches were not set out with sufficient minuteness; and it was insisted in the argument, that the amount of each particular sum, withdrawn by the Teller at each particular time, should have been specially stated. I think the breaches were well assigned, both upon the English and American cases; and I refer to Strum v. Farrington, 1 Bos. & Pull. 160: Barton v. Webb, 8 Term Rep. 459; Carlin v. Chalklin, 3 Mau. & Selw. 502; Craghill v. *Page, 2 Hen. & Munf. 446; Winslow v. Commonwealth, Ibid. 459.
Upon the special verdict, it is clear, (and indeed, was admitted,) that the Appellant is responsible for the sums comprised in the 12th, 13th and 14th findings of the Jury; these being direct and clear breaches of Frayser’s official bond. The great controversy was upon the 4th, 5th, 6th, 7th and 8th findings; and as to these, the Counsel for the Appellant contended, that he, as surety for Frayser, bound himself only that Frayser should faithfully perform the duties assigned to, or trust reposed in, him, as Accountant; not that he should commit no felony: that the takings stated in the 4th, &c. findings, were not connected with the duties of an Accountant, as expressly found by the Jury ; but were pure and simple felonies, committed by Frayser, in stealing the money from the Teller’s drawer: that, therefore, the Appellant was not liable for these monies, first, because the takings were no breaches of the bond ; secondly, because, if they were breaches, they were felonies, and the felony merged the trespass, so far at least, that no civil action could be maintained, till the felony was prosecuted to conviction or acquittal. On this last point, (though I have examined it much, and at one time though the case turned on it,) I shall say not a wo'd, because I am now satisfied that it does not fairly arise, as the first question disposes of ail these findings. After stating in the 4th, &c. findings, the manner in which Frayser took and concealed the various sums contained in those findings, the Jury, in their 10th finding, say, ‘.‘We find that the said Frayser was not, at any time while he was Accountant at the said Office of Discount and Deposit, nor in any wise by his said office of Accountant, or by the regulations or usages of the said Bank there, entrusted with, or put in possession of, the monies kept in the Teller’s cash drawer, or of any other money of the Bank at its said office, or entrusted with the safe keeping, receipt, or disbursement of such monies; and that the said Frayser ^fraudulently and improperly, and without the consent of any other officer of the Bank there, took and carried away from the Teller’s cash-drawer, and to his own use converted, the said several sums of money in our 4th, &c. findings, mentioned; and also concealed such taking and carrying away, in the manner in our said findings stated, with intent, at the time and times at which he so took and carried away the said monies, to convert them to his own use, and well knowing that he had no right to take and convert them.” If there be a single ingredient necessary to the composition of larceny, not found here, I confess that I have strangely mistaken the matter. It is found, too, that this larceny was wholly unconnected with the office of Accountant: that, as Accountant, Fray-ser had nothing to do with the money of the Bank in any way. Was stealing within the bond? Was it to guard against a felony of this kind, (or any felony,) that the bond was taken? Could Allison, when he signed the bond, intend to bind himself, that Frayser should not steal? No more, I conceive, than that he should not commit any other felony.
I am, therefore, of opinion, that so far as relates to these findings, the Judgment be reversed, and entered for the amount of the 12th, 13th, and 14th findings, with interest from the 1st of January 1818, till paid.
JUDGE GREEN.
This is an action upon a bond executed by an officer of the Bank and his sureties, with condition faithfully to perform the duties assigned to, or trust reposed in, him, as Accountant, and to be of good be-haviour in office, so long as he continued therein. The Declaration sets out the condition of the bond, and assigns various breaches: 1. In availing himself of his office, fraudulently to withdraw and appropriate to his own use, divers large sums of money belonging to the Bank. 2. In *668 fraudulently keeping' the books of the Bank, and fraudulently omitting proper entries *therein, whereby he himself fraudulently got and obtained, and others fraudulently got and obtained and appropriated to their own use, divers other large sums of money belonging to the Bank. 3. In permitting fraudulently, and by the fraudulent keeping of the books, divers persons to over-check, and thereby obtain other large sums of money from the Bank, to which they were not entitled. 4. In failing to post charges, and enter as debits to any person or persons, divers large sums of money paid by the Bank upon checks presented by him and many other persons; by which means, he and others fraudulently withdrew other large sums of money from the Bank. S. In fraudulently making divers false entries and untrue credits on the books, and fraudulently entering divers large sums of money to the credit of divers persons, which were never deposited or paid by such persons; thereby making them appear to be creditors of, whilst they were debtors to, the Bank.
To this Declaration, a special demurrer was filed, assigning for ca'uses of demurrer, that the Declaration claimed no damages, and that the assignment of breaches was too general; not stating, in any single instance, time or place, names- or sums of money.
I do not think, that in an action upon a bond with collateral condition, it is neces-. sary to state, in the conclusion of the Declaration, the amount of damages sustained; for, if it be stated, the Plaintiff, in such cases, can recover more damages than are laid in the Declaration. Yet in all cases, there ought to be an averment in the Declaration, that the Plaintiff sustained some damage, by reason of the facts upon which the action is founded. In the cases in this Court, in which it has been held that no damages need be stated in an action of debt, although the amount of damages was not stated, yet it was averred that the Plaintiff had sustained damage; and in these cases, there were verdicts. In all the Books, it is laid down, that every Declaration, (except in aquitam action) must conclude with an allegation that the *Plaintiff has sustained damage; though I cannot find any case, in which the failure to make that allegation, was held to be fatal' upon demurrer. Indeed, there is no case reported, in which the question arose. It is probable, that no English Pleader ever omitted this averment in the Declaration. There is in this Declaration, no intimation that any acts or omissions of the Accountant, or the failure to pay the penalty of the bond, produced any damage to the Plaintiffs. But, in the place where this latter averment ought to have been made, we find an averment that the principal obligee had absconded.
The Declaration in the case of Allison v. The Bank,* is precisely the same as in this, except that after setting out the breaches, it alleges that the Plaintiffs have been greatly injured thereby, by reason whereof, an action hath accrued to them to demand the penalty of the bond, and concludes :ito the damage of the Plaintiffs $10,000;” and to that Declaration, there is a special demurrer, as in this case. Besides the objection in Caldwell’s Case that no damages are alleged as being sustained by the Plaintiff, the objections that no time when, nor place where, the several acts alleged to be breaches of the condition of the bond were done, are stated, nor any specific sum or sums of money are alleged to have been taken by Frayser, or lost by his negligence, are common to both Declarations. I think these objcetious are well founded. There ought, in all pleadings, to be a reasonable degree of certainty. The time when the acts complained of were done, ought, I think, to have been stated, in order to show that they were done after the execution of the bond, and before the institution of the suit, and during the continuance of the principal obligor in office; and the sums taken, ought to have been stated in detail, or in the aggregate; and it should have been alleged, that they were lost to the Plaintiffs, by reason of the fraudulently making false, or omitting *to make true, entries, or other acts done in breach of his duty. When the particular statement of all circumstances would lead to great prolixity, as in this case, a more general mode of pleading is allowable than in ordinary cases. Strum v. Farrington, 1 Bos. & Pull. 640; Barton v. Webb, 8 Term Rep. 459. See the later case of Deniston v. Richardson, 14 East, 291. But, this is allowed only to avoid prolixity and voluminous pleading; but surely, this indulgence to necessity or convenience, does not dispense with that degree of certainty, of which the pleadings are susceptible without prolixity. If, in fact, the breach of the condition of the bond had consisted in one false entry, and the loss thereby, of one single sum of money taken by the Book-keeper or any other; it would not have been sufficient, upon a special demurrer, to allege in the Declaration, that a sum of money was lost, by reason of a false entry, without stating time, place, name and sum. For, in that case, the motive to avoid prolixity would not exist. And so in these cases, it would not have increased the volume of the pleadings, or produced any inconvenience, to allege that divers sums of money, to the amount of $20,000, were taken and lost, by reason of divers false entries, &c. to the Plaintiffs, after the execution of the bond, and before the institution of the suit, and whilst the principal obligor remained in office, to wit, on the day of at the County aforesaid. I think, upon this ground, the Declarations are insufficient. My brother Judges, however, , differing with me in this, I proceed to examine the cause upon its merits.
It is admitted, that the sums of money amounting to $3,115 32 cents, mentioned in the 12th, 13th, and 14th findings of the Jury, are properly chargeable on the Bookkeeper’s sureties; but, as to those mentioned in the 4th, 5th, 6th, 7th and 8th findings, amounting to upwards of $20,000, it is contended, that they are not recover *669 able in this action, because the sums of money lost to the Bank, in the manner stated in those findings, were not lost in ^consequence of any official misconduct of the Book-keeper; and if they were, that they cannot be recovered against his sureties, as they could not be recovered against him, since his acts, in taking those sums of money, were felonious, (as they certainly were,) and he has not been prosecuted for the felony. These several findings state, in effect, that the Book-keeper, from time to time, during several years, took clandestinely from the cash-drawer, various sums of money, not entrusted to his care or keeping, and successfully concealed the facts, by the fraudulent use of the paid checks confided to him as Book-keeper, and by making false, and omitting to make true, entries, knowingly and for that purpose, and by forcing additions in the books kept by him; and in the 9th finding, the Jury say “We find that all the said sums of money mentioned in the 4th, 5th, 6th, 7th and 8th findings, where wholly lost to the said Bank, by reason of the said Frayser obtaining the same from the Teller’s cash-drawer, in the manner stated in our said findings; and, that he, the said Frayser, was enabled to obtain the same by the fraudulent and improper use of the checks in his possession as Accountant as aforesaid, and to conceal the same by false and fraudulent entries and omissions in the books in the manner aforesaid.” This declaration of the Jury, that Frayser was enabled to obtain money, by,the fraudulent use of the checks, and concealed the fact by false entries, applies only to the sum found to be taken, in the 4th finding. But, that sum amounts to more than the penalty of the bond; and if his sureties are liable for that, it is unnecessary to enquire as to any others. This fraudulent and imptoper use of the checks confided to him, and the intentionly making of false, and omitting to make true, entries, were per se breaches of the condition of the bond; and the Plaintiffs were, for that only, entitled to recover the penalty of the bond, to be discharged by nominal damages, and such other as might after-wards accrue, by reason of future breaches; and if any real damage was the consequence *of those acts done in breach of the condition, they were entitled to recover them, no matter whether these consequences were direct or indirect, so that they could be distinctly traced to that cause, and to no other. Whether the loss of the money was really a consequence of those acts, was purely a question of fact belonging to the Jury exclusively ; and I think they have distinctly found, and intended to find, that the loss was the consequence of the taking and concealment, and that he was enabled to take and conceal, by means of acts in violation of the condition of .the bond. If, upon the other facts specially found, the Court, if in the place of the Jury, would have made a contrary inference, that would be the proper ground fora new trial, and would not justify the Court in declaring the fact to be contrary to the verdict, and thereupon pronouncing a final Judgment. I think, not only that the Court is bound by the verdict, but that the Jury, in finding thus, did not indulge any rash or unfounded presumption. It cannot be said, that the loss could not possibly be the consequence of those a^ts; or, even that it probably was not. The Jury state the manner of keeping and examining the books daily; from which it is clear, that there was a moral certainty that if the books had been truly kept, the taking would have been immediately discovered; and that might, and probably would, have led to the detection of the thief, the recovery of the money', and the prevention of any future losses by the same means. The possibility that the taking might not have been detected, or if detected, traced to Frayser, or, if traced to him, the money might not have been regained by reason ox his flight, or any other imaginable cause, can hardly be considered as decisively outweighting the contrary probabilities. Suppose it to be the duty of the Book-keeper, to give immediate notice to the Cashier, if he should discover it in inpecting the books, that some one had overdrawn, and the money was lost to the Bank, would it be any de-fence to say, or even to prove, that the person who had got the money, might have, or did *in fact, fly the Country, or might have been, or was in fact, insolvent, before the money could have been recovered of him, if the Accountant had done his duty? I think not. One who flies, may if promptly pursued, be retaken even in a Foreign Country, and the money regained; and one who is insolvent may pay, by means of his friends, to avoid imprisonment or disgrace. Depriving the Bank of a chance, however small, of indemnifying themselves, and by an act violating his official duty, I think subjects the Accountant and his sureties to a responsibility, which can only be measured by the full amount of the money taken and lost.
Upon the question, whether the felony of the principal is a bar to, or a suspension until he is prosecuted criminally, of the action on his bond, I have no doubt. I have examined with great care the English doctrine on this subject, from its origin to the present time. But, as this case is not to turn on that point, I shall not state at large the grounds of the opinion that I have formed, but confine myself to a mere summary of the result of my enquiries and reflections upon it.
We find no trace of any thing like this doctrine in the Books of the Common Daw, before the time of Hen. 6; but, on the contrary, Bracton, who wrote in the time of Hen. 3, lays it down, that a party injured by a felony, may seek redress by a civil action, or an appeal of felony, which was a criminal prosecution, at his election. Book 3, ch. 3, sec. 1. And to the same effect is Fleta, Book 1, ch. 38, sec. 1, and Book 2, ch. 2, sec. 5; a Book written in the time of Edw. 2, or Edw. 3, according to Eord Coke. Proem to 10 Rep. or of Edw. 1, according to Selden in his edition of Fleta, page 547. And in the 44th Edw. 3, Ass. 44, 13, Judgment was given for the Plaintiff in an action of trespass against several for the ravishment of his wife, and taking *670 away his goods; which was a felony at the Common Law, and was then also a felony by the Statute of West. 2; 2 Inst. 434; 20 Vin. Abr. 467, *X. 4, PI. 1. There is not a single adjudged case reported to this day, in which a civil action founded on a wrong amounting to a felony, has been adjudged not to lie. On the contrary, Judgments have been given for the Plaintiffs in many such cases, where the felon has been prosecuted and acquitted or convicted, and even where he has not been prosecuted criminally. The whole doctrine on this subject in England, rests upon the dicta of the Judges thrown out ar-guendo, and assuming various grounds as the foundation of the rule. The first of these dicta is to be found in the case reported .in the Year Book 31 Edw. 6, PI. 6. That was a Writ of Conspiracy against several, for that they had indicted the Plaintiff of an assault upon B., and beating and wounding him, &c., and feloniously stealing from his purse four shillings, of which he was acquitted. An objection was taken to the action, that it did not lie for a conspiracy in indicting the Plaintiff of an assault, battery and wounding. To this it was answered, that all those matters being contained in one Indictment, an acquittal of the felony was an acquittal of the trespass “quia magis dignum trahit ad se minus dignum,” and “felony is of a higher nature than trespass,” and “if one come to my house to rob me, and breaks my house, and takes the goods or not, the robbery and breaking of the house are one felony; and if he be acquitted of the felony, he is acquitted of the trespass also.” Brooke, in abridging this case, says, “It was agreed that if a man be indicted, arraigned, and acquitted of robbery of J. S., he shall not thereof have trespass; for, the trespass is extinct in the felony, and omne majus trahit ad se minus. Quaere inde.” This is the origin of the rule, founded upon the doctrine of merger, and a mere dictum; and it had, if true, the effect of barring the civil action for the tort, under all possible circumstances. Yet, this doctrine was abandoned in the first case which occurred, of an action brought after a conviction of the Defendant upon an indictment; “because (as it was said) the party had thereby *lost his remedy by appeal;” and so it has been held, that the civil action lies after an acquittal on an Indictment; thus shifting the foundation of the rule from the ground that the trespass itself was merged and lost in the felony, to the other, that the inferior remedy by a civil action was merged in the superior remedy by appeal, (which was a criminal prosecution,) and allowing that when the higher remedy was lost, the inferior remedy revived. And in modern times, the Judges, admitting the existence of the rule, have abandoned this latter ground also, and placed it upon the broad footing of public policy, and the interests of the public in encouraging and coercing individuals to engage in the prosecution of crimes. Indeed, there seems to be good reason for the doctrine of modern times upon this subject, in England. It is in conformity with the severe spirit of their Eaws, in respect to the prosecution and punishment of crimes, which has always urged individuals, by various inducements, to the prosecution of crimes; by the forfeiture of the stolen property to the King, in case of a conviction without the intervention of the party, and fresh suit on his part; or to the Lord of the manor, when the property is waived by the felon and seized as waif; enlisting the passions of private revenge, by allowing an appeal at the suit of the party, in which, if there was a conviction, the King could not pardon; by making the Hundred liable, if the party made fresh suit, and hue and cry, and the felon was not arrested ; but not otherwise. In all these respects, the policy and spirit of our Laws are the reverse of those of the English Laws. We have no appeal, in which the right to a civil action can merge. We have no forfeiture to the public, of the stolen goods or even of those of the felon ; no fresh suit, or active prosecution, on the part of the injured person, is required by our Laws, to entitle him to restitution. We have no Law of waifs, nor any subjecting the Hundred to make satisfaction in any case; and our Law, upon the whole rather discourages than invites individual prosecutions. *And I am persuaded that the object of promoting the prosecution of crimes, would be more promoted by allowing the injured individual to prosecute his civil action uninterruptedly, and thus expose all the circumstances of the transaction to the Officers of the Law, who are bound ex officio to prosecute for the public, that .by holding out strong inducement to both parties, to compound the felony, by throwing impediments in the way of the civil remedy.
The rule in question has never been practically extended, or distinctly declared to extend, to any case, in which the suit was not against the felon himself, and founded on the felonious act, as the gist of the action; nor to third persons guilty of no crime, nor to any action founded on contracts.
I think, that upon the merits, the Judgments in these cases were right.
JUDGE COALTER.
The first question in these cases arises on the demurrers to the Declarations. I have some doubts on this question; but, on the whole, am inclined to support the Declarations.
This is an action of debt for the penalty of the bond, which is one with collateral condition for the faithful discharge, by the principal obligor, of his duties as Accountant in the Bank. They are several actions against each surety, for the sum in which they became jointly and severally bound with their principal. ‘
There are two ways of declaring; one, simply in debt on the bond, in which case, if the Defendant craves oyer of the condition,. and pleads performance, the Plaintiff must reply and set out the breaches; or, if it goes to a Writ of Enquiry without plea, the Plaintiff must assign his breaches, &c. The Judgment is for the debt sued for, to be discharged by the damages found on the breaches assigned; and *671 the Judgment will stand as security for any breaches thereafter, which may be recovered on a Scire Facias setting out new breaches. This is by virtue of the Act of Assembly (1 Revised Code, 509;) before which, only one breach could be assigned, as the assignment of more would be duplicity; and however small that breach, the whole penalty was recovered, and the party was driven into a Court of Equity, to be relieved against the penalty. The other mode of declaring, is, to set out the condition in the Declaration, and assign the breaches in it. This latter mode has been pursued in this case.
There is no question, that an assignment <of breaches against the sureties need not be more specific, than if assigned in a Declaration against the principal, (Barton v. Webb, 8 Term Rep. 459 ;) and the question is, whether it is sufficient to say, after setting out the particular manner in which the principal violated his duty iu each particular case of loss, that thereby divers large sums. &c, were lost, without setting out in detail each particular sum. It seems that if, after the words “divers large sums,” the Declaration had gone on to state, “amounting to the sum of Si,000,” or any other gross sum, it would have been sufficient; though the Plaintiff would not be bound to prove that identical sum to have been lost. This shows that the particular sum is not traversable, or necessary to be known, in order to enable the party to defend himself; and it would, therefore, seem to me to be strange, that this should be a cause of demurrer. The acts of violation of duty, it seems to me. are sufficiently stated, to apprise the party of the grounds on which a recovery is sought; and as the action is for the penalty, and for a debt which has accrued by reason of a breach of the condition, and which must be recovered in debt, if any breach, however small, is proved, damages on the amount of that breach need not be laid in the Declaration. The damage, if any, which is to be laid in the Declaration, is damage for the nonpayment of the debt; and although in general, this is but nominal, yet it is the usual form of declaring, to claim damages; and as *the forms of the Daw are often proof of the Daw, it is said that the Declaration, which in one of these cases, does not claim such damages, is bad. I am not prepared to say, that in the general, this would not be a good cause of demurrer; though it would seem strange that the omission to claim what at most would jus-tity the verdict and Judgment for one cent damages, and that against the demurrant who gets clear even of that because it is not claimed, should be insisted on by him as a ground of demurrer. He could only so insist upon it, on the ground that for want of this, no cause of action is laid in the Declaration. But the debt, which he owes by reason of a breach of the condition, is the substantial cause of action. But, the party will be excused for not claiming damages for the failure to pay a debt, I presume, wherever it would be error to give Judgment for damages, if claimed. There are many cases in which it is, error to give such Judgment; as, in qui tarn actions, and in actions popular on penal Statutes, and Judgments on Scire Facias. Frederick v. Dookup, 4 Burr. 2018; Cuming v. Sibley, Ibid. 2489. This would seem to me to be much a case of this kind. The sureties here are responsible no further than for the penalty of the bond; though their principal is responsible for the whole loss. They are strangers to the breach, and cannot know that such breach has taken place until it is so adjudged; and of course, cannot fairly be said wrongfully to have detained a debt, nor could any thing, except what would, at most, be purely nominal, be recovered against them for damages. They would not be liable for interest on the penalty, by way of damages, from the time of the breach. The first breach may be small, and yet the penalty is thereby forfeited. Besides, the act itself would seem to exclude it. If the breaches sued for do not cover the whole penalty, and that can only be ascertained by the verdict, the Judgment for the penalty stands as a security for after breaches. For these, however, no Judgment can be had on the Scire Facias, beyond the penalty. No Judgment can be given *for damages, for not paying the debt, when the whole shall have become due, for these after breaches.
As to the merits. It seems to me, that the great question in controversy in these cases, rests on the first breach assigned, and the verdict in relation to it. It avers, that William Frayser, the principal obligor, did not faithfully perform the duties assigned to him, or the trust reposed in him as Accountant, and was not of good be-haviour in his said office of Accountant, particularly in this, that whilst acting as Accountant, he availed himself of the said office of Accountant, fraudulently to withdraw, and did fraudulently withdraw from the said office, &c. and appropriate to his own use, divers large sums of money belonging to the said Bank.
It is not pretended, I presume, that the first branch of this assignment, in the words of the condition, had it stopped there, would have been a good assignment of a breach in a case like the present; and I understand it as merely preliminary to the specific assignments afterwards set out, in the same manner as if repeated before each. This specific breach, then, unless it can be construed to mean that the fraudulent taking was perpetrated in the course of the fulfillment of the duties assigned, and the trust reposed in him as Accountant, could have been supported by evidence simply proving, that whilst acting as Accountant, he availed himself of his contiguous stand to the Teller, or his drawer, and had taken from the pocket of the Teller, or f.-om his drawer, monies belonging to the Bank. This would be a simple felony, which a dealer in the Bank, admitted behind the counter, or which a servant in the Bank, so admitted, might be guilty of, owing to the advantage of his situation so obtained. Had the breach been thus broad, or if it can be so considered, it seems to be that it would be substantially bad, and would be reached by the demurrer.
But, it is connected with the actings of *672 Frayser in his office, not only by the general allegation preceding it, that *he had violated the duties oí his office, but it connects the act done with his acting, at the time it was done, as Accountant, ‘‘whilst acting as Accountant;” and it lays it as a fraudulent abduction of the money, not a felonious taking, or such a taking as the preceding statement would show to be a felonious taking. It is laid to be a taking connected with his duty and trust as Accountant, and so only a breach of trust. It might have been so. It might have been a duty assigned to him, to pay and receive money in the absence of the Teller; and so he would have been entrusted with the money. Had the breach been simply, that being Accountant, and entitled to stand behind the counter, and near the Teller’s drawer, he had availed himself of that position to steal the money of the Bank from the drawer, then the question would have been, whether such breach would be good, either on demurrer, or after verdict, to charge the surety?
The Defendant’s second plea intended to put this matter of fact in issue; that is, to aver that the taking was not connected with his duties or trust as Accountant, and was a mere fraudulent taking, of which any other man might have been guilty, and so the surety not liable. The replication to this plea, as I understand it, denies this, and affirms, that the damage sustained was by reason of the nonfeasance, malfeasance, and misbe-haviour of the said William Frayser, in his office of Accountant, as the Plaintiffs in declaring have alleged. Had the Plaintiffs demurred to this plea, thereby admitting that the loss sustained was by means of a felonious stealing by the Accountant, but that nevertheless the sureties were liable as fully as the thief himself was, that question of Law would have been thus fairly before the Court. But, the case is not rested on that. The taking is insisted on as a mere fraudulent breach of that trust and confidence reposed in him as Accountant, and for the faithful discharge of which he gave the bond sued on.
*The Jury, in their first finding, negative the idea that Frayser ever acted for, or performed the duties of, the Teller, in his absence from indisposition, or in any short or occasional absence; and in the 10th finding, it is stated, that he was in no wise by virtue of his office, or by the regulations or usages of the Bank, entrusted with, or put in possession of, the monies kept in the Teller’s cash-drawer, or with the safe-keeping, receipt, or disbursement of monies; and that he fraudulently and improperly, and without the consent or knowledge of any other officer of the Bank, took and carried away from the Teller’s cash-drawer, and to his own use converted, the said several sums of money,, in the 4tb, 5th, 6th, 7th and 8th findings; and also concealed such taking in the manner in said finding stated, with intent to convert them, and well knowing he had no right to take and convert them. In other words, they find a felonious stealing and carrying away, setting out all the means of concealment, &c. which accompanied the various acts of felony. This is the substance of the finding, taking it all together.
Suppose the means of concealment had not proved quite so good, but that the Cashier had, within an hour after the first transaction, or the next day, taken the trouble to compare the books, &c. ; and the Accountant, seeing he must be discovered, had absconded with the money; would his surety have been responsible? Suppose he had simply stolen the money, and resorted to any other mode of concealment which his stand in the Bank enabled him to use. As for instance; suppose the Teller, missing the money, and suspecting some one else, had consulted the Accountant, and he, under the pretence of finding the felon, had agreed with the Teller to conceal the matter for a short time, by forcing the books, &c.; but, in the mean time, finding suspicions attach to himself, he makes his escape with the money; would this artifice, and the use of his books for this purpose, although it might have shielded him from immediate detection, have been sufficient to charge his surety, *if they were not chargeable at the moment he stole the money? That act, if the money was never returned to the drawer, is the act which caused the injury. The means of concealment may be more or less efficacious, according to the credit and high standing of the officer committing the felony, or the influence of the other officers. The various acts of felony, and the means used, and the length of time they are concealed, it seems to me, cannot vary the Law of the case. Notwithstanding the means resorted to here, the first felony might have been discovered within two'minutes after it was perpetrated. Suppose a dealer had come in, and presented his check, and the Teller had told him, “You had only $1,000 in Bank; you checked on yesterday for $500, and on today for $500 more;” and he had denied the latter. In the mean time, the Accountant, knowing what is to follow, makes his escape with the money. Would the sureties have been liable? If, instead of stealing the money, he had presented the check a second time, or causeo it to be presented, and has thus gotten the money, it would have been another matter. The act, by which the money is lost to the Bank, is a simple act of stealing, which any one might commit; and the question is, must the sureties in the bond answer? I think not. Suppose he had given no security, but had executed his sole bond, binding his heirs, &c., and there had been no other claim against him, except that arising out of his felonious taking: Could he have been sued on the bond for it? Suppose the truth of the case to be set out in the Declaration ; would it not be debt and trespass united? It seems to me it would. Suppose he had died before suit; would this have ranked against his executor as a debt due by bond, or as for goods taken by the testator, and converted, &c.? If he had left no personal estate but had been detected a few minutes after the felony, and had cut his throat, could a suit have been maintained on the bond, against his heir *673 or his sureties? Or, suppose the Plaintiffs had taken and prosecuted him for *the felony, and he was. now in the Penitentiary, as he ought to be, according to this finding of the Jury; would the action lie for the goods so feloniously stolen, against the surety? Suppose the Declaration, instead of alleging that he had escaped, had stated that he had been taken, prosecuted, and was now in the Penitentiary, and so the Plaintiffs had a right to demand and have the penalty from the sureties; could the Declaration have been sustained on demurrer, or after verdict?. I think not. There being various acts of felony, long concealed, &c., cannot vary the case. But, it was a breach of good behaviour to steal the cash of the Bank. So it would have been to assault the President or Cashier for coming to examine his books. But, it was a breach of his duty to spindle a check a second time, and take the money, which, if any one else had done, and he had known and concealed it, he would have violated his duty. Say he would be bound to discover such felony and fraud in another; no one is bound to accuse himself of a felony, nor can the condition of this bond be construed to bind him to do so, or that the bond shall be forfeited if he does not. Flven if it was a bond expressly that he should not commit any felony in the Bank, he would not be bound to discover it on himself. The concealment was a mere non-discovery of the felony.
But, this question seems to me ndt to be presented by the breach assigned, or by the replication to the second plea. Both put it, as aforesaid, on the breach of trust, duty., confidence, &c. belonging to his actings and doings in his office of Accountant. The verdict negatives this. No loss, as to the cases in these first findings, arose +o the Bank, or would have arisen, by any of them, if he had not stolen the money. Suppose, in order to pave the way for taking the money, he had made false entries, &c. had actually spindled a check, but had taken it off afterwards, on finding that he could not take the money at that time. The books being finally posted right, so that no loss was sustained, these acts, however contrary to duty and good *intention, would not have been a breach of the bond, so as to subject the sureties. An intention to commit a felony, without doing it, is not indictable.
The verdict finds, that no loss was sustained, as to the matter in these first findings, except what arose from the act of taking the money from the drawer.
I think, therefore, there can be no Judgment for those sums: but, that we can enter Judgment for those in the other findings.
JUDGE CABEEB.
In the case of Allison v. The Farmers’ Bank, the objections to the Declaration are first to be considered. The most of these objections resolve themselves into one, viz: that the assignment of the breaches is too general. In this respect, this case bears a very strong resemblance to the cases of Strum v. Farrington, 1 Bos. & Pull. 640, and Barton v. Webb, 8 Term Rep. 4S9. In the first of these cases, the bond was conditioned for an agent’s accounting for, and paying to the Plaintiffs, all such sums as he should receive as their agent. The breach assigned was, that the agent “had received divers sums of money, amounting to a large sum of money, viz: 2,0001., as agent, and had not accounted for, and paid, the said sum of 2,0001,, or any part thereof.” There was a special demurrer, on the ground that the assignment was too general, in not stating “from whom, or in what manner, or in what proportions, the said sums of money amounting to 2,0001., were received.” It was held, however, that the assignment was sufficiently special.
In the case of Barton v. Webb, the bond was conditioned for a collector’s accounting for, and paying over to the Plaintiffs as Treasurers of a Charity School, such voluntary contributions as he should collect for the use of the charity. The breach assigned was, that the collector “had received divers large sums of money, amounting in the *whole to a large sum of money, to wit, the sum of 1001. of and from divers persons, and as for divers voluntary contributions, &c. for the use of the Charity School,” and had not accounted and paid, &c. This assignment was demurred to, because the Plaintiffs had not named, or ascertained the persons from whom the collector had received the several sums of money mentioned in the breach, so as to enable the Defendant to meet the charge ; and because the breach was too vague and general. This breach, also, was held to be sufficiently special.
The objection to the breaches in the case before us, as to generality and vagueness, is not stronger than it was in the cases just referred to; so far at least, as relates to the designation of persons, and of the sums received from each. It is true, that in the cases cited, the aggregate amount of the sum is stated. But, this appears to me to be an unimportant particular; for, the Plaintiff would not be bound to prove the amount stated ; nor, was the statement of the aggregate amount necessary for enabling the Defendant to meet the charge. The objection as to vagueness and generality, is, therefore, entitled to no weight.
The breaches have been objected to on another ground; that the time is not stated with sufficient precision. The Declaration, it is true, has not paid much regard to form, in this respect. But, although the precise time is not mentioned, yet the breaches have been assigned as having been committed by Frayser, whilst acting as Accountant in the said Office; which, I think, is sufficient. I am not disposed to encourage objections, which, while they tend to produce delay, are not necessary for any of the purposes of justice.
The objection, that there is no statement of any amount of damage as having been sustained by the Bank, appears to me to be frivolous. This is an action of debt on a bond, the penalty of which is forfeited by *674 a single breach of the condition, however small the damage occasioned by it may be. At Common Law, the Judgment was entered accordingly, *foi: the whole penalty; and the Judgment is still to be thus entered. But, by the provisions of the Statute, it is to be discharged by the damages assessed by the Jury, for the breaches proved. But, the Plaintiff is not bound, even since the Statute, to do more than to state the condition of the bond, and to assign the breaches; nor is it usual for him, in assigning breaches, either in the Declaration or replication, to state the damages occasioned by the breaches. The Plaintiff’s right to recover a Judgment for the whole penalty, is established by any breach of the condition; and it is the province of the Jury to assess the amount of damage sustained, and by payment of which, the-Judgment for the penalty is to be discharged.
The demurrer to the Declaration was rightly overruled.
I come now to the merits of the case, as disclosed by the special verdict.
The Jury, in their 4th, Sth, 6th, 7th, 8th, 12th, 13th and 14th findings, set forth various acts of Frayser, by which the Bank, has, in fact, lost $25,615 32 cents. But, as the Jury doubted how far the Appellants aré liable therefor, they pray the advice of the Court and say, “if upon the whole case, the Court is of opinion, that the Defendant is liable to the Plaintiffs, to the amount of $10,000, then we find for the Plaintiffs the debt in the Declaration mentioned: and if the Court shall be of opinion, that the Defendant is liable for a less sum than $10,000, then we find for the Plaintiffs the debt in the Declaration mentioned, to be discharged by the payment of such sum as the Court shall hold the Defendant liable for, upon the facts stated, with interest from the 1st of January, in the year 1818, till paid; so as such sum, with interest, exceed not $10,000.” The Superior Court, being of opinion that the Law was for the Plaintiffs, gave Judgment for the debt in the Declaration mentioned.
It was admitted in the argument, by the Counsel for the Appellants, and indeed it could not be denied, that the acts of Frayser, producing the losses stated in the 12th, *13th and 14th findings of the Jury amounting to $3,115 32, are violations of the conditions of the bond, for which the Appellant is liable to the Appel-lees.
But the great question is, whether the Appellant is liable for any part of tne losses sustained by the Bank, as set forth in the 4th, 5th,. 6th, 7th and 8th findings of the Jury; which losses, as stated, amount to $22,500; or, in other words, whether the acts of Frayser, set forth in these findings, as producing the losses therein mentioned, are violations of the conditions of the bond.
The condition of the bond is, that Frayser “shall faithfully perform the duties assigned to, or trust reposed in, him, as Accountant, and shall be of good behaviour in office, so long ' as he shall continue therein.” As this bond was thus entered into solely for the purpose of making Frayser and his sureties responsible for the faithful discharge of his duties as Accountant, and for his good behaviour in that office, it is obvious that even Frayser himself would not be responsible on this bond, for any act of his whatever, that did not pertain to the duties of his office as Accountant. If, therefore, he had forcibly, or fraudulently, or feloniously, taken from the Bank, and converted to his own use, money belonging to the Bank, .with the possession, safe-keeping, receipt or disbursement of which, he was not entrusted as Accountant, even Frayser himself would not be liable for it, in an action on this bond; because the act complained of, not pertaining to the duties of his office, as Accountant, is entirely out of the condition of the bond.
This principle, applied to the facts in the 4th; 5th, 6th, 7th and 8th findings, will be decisive of the question as to the liability of the Appellants, for the various losses therein set forth. These findings show that Fraj’ser took fraudulently, improperly, and without the consent or knowledge of any other officer of the Bank, from the Teller’s cash-drawer, divers sums of money belonging to the Bank; and they show the means by which he contrived to conceal such ^taking. These means of concealment consisted partly of the improper use of checks confided to his care, as Accountant; and partly, of fraudulent entries and omissions in the books kept by him, as Accountant. But, the Jury, in their 9th finding, say expressly, that all the sums of money mentioned in the 4th, 5th, 6th, 7th and 8th findings, “were wholly lost to the said Bank, by reason of the said Frayser obtaining the same from the Teller’s cash-drawer;” and in their 10th finding, they also say expressly, that Frayser “was not, at any time, while he was Accountant, nor in anywise by virtue of his said office of Accountant, entrusted with, or put in possession of, the monies kept in the Teller’s cash-drawer, or of any other money of the Bank, or entrusted with the safe keeping, receipt or disbursement of such monies;” and they go on to state circumstances, which show that the taking of the money by Frayser. was a theft committed by him on the Bank. It then clearly appears, that the loss to the Bank was occasioned by acts of Frayser, not pertaining to the duties of his office, and therefore, out of the condition of his bond.
But, it is contended by the Appellees,, that the Jury, in their 5th finding, say, that Frayser took from the Teller’s drawer, the sums mentioned in that finding, “by the fraudulent use of checks which had been previously paid in the regular way, and been confided to him as Accountant;” and that in the 9th finding, the Jury farther say, as to all the sums of money mentioned in the 4th, 5th, 6th, 7th and 8th findings, that “the said Frayser was enabled to obtain the same, by the fraudulent and improper use of checks in his possession as *675 Accountant.” It must be admitted, that it is difficult to say with certainty, what the Jury meant by the use of these expressions. A reference to the 4th, Sth, 6th, 7th, and 8th findings themselves, will show that all the sums of money therein mentioned, are found by the Jury to have been fraudulently and improperly taken by Frayser from the Teller's cash-drawer, without the consent or knowledge of any other officer of *the Bank; and the 10th finding shows, that such taking was theft. It is most manifest from the facts stated by the Jury themselves, that the use of the checks was not necessary to accomplish the taking, the stealing, of the money from the Teller’s cash-drawer; and it is very remarkable, that as to the monies stated in the 6th, 7th, and 8th findings, no use whatever was made of any check, either as the means of taking the money, or of concealing the taking. In those cases, the taking was absolute, direct stealing, without any use of checks; and it was concealed solely by false entries and omissions in the books; and it is also manifest, that the Jury in the 4th finding, do not refer to the use of checks as a means of affecting the taking, but only as a means of concealment. And even in the 5th finding, the Jury, referring to the 4th finding, speak of the “like fraudulent use of checks.” The whole verdict must be taken together; and taking it in this way, I think it probable, that the Jury meant no more by the expressions quoted in the Sth and 9th findings, than that the first improper use of a check, prevented a discovery of the first theft; and that that improper use was the remote and indirect cause of his being enabled to commit subsequent thefts; since, if the first theft had been discovered, it would have led, to Frayser’s removal from office, and would consequently have deprived him of the opportunity of committing the others.
But, let it be, that the Jury meant what they certainly could not mean without contradicting themselves, and finding against positive facts; let it be, that the Jury meant that the fraudulent use of checks by Frayser was the means, by which he was enabled to commit the several thefts mentioned in the 4th, 5th, 6th, 7th and 8th findings. Even then, it will be found that the loss sustained by the Bank is to be referred to the acts of stealing the money, and not to the facilities or means by which he was enabled to steal it. And so the Jury have expressly declared in their 9th finding; for, they there say, that “all the sums *of money mentioned in the 4th, 5th, 6th, 7th and 8th findings, hereinbefore stated, were wholly lost to the said Bank, by reason of the said Frayser obtaining the same from the Teller’s cash-drawer, in the manner stated in our said findings;” which manner of obtaining it amounted, as I have before observed, to theft. Nor, when the Jury have said, that the damages sustained by the Bank arose from the thefts of money by Frayser, with which money, Frayser, as Accountant, had nothing to do, such damage, cannot be recovered on a bond, whose sole object was to provide an indemnity for damage arising from misconduct in office.
It cannot be denied, that Frayser’s fraudulent use of checks entrusted to him as Accountant, and that his fraudulent entries and omissions in the books kept by him as Accountant, were violations of the conditions of his official bond. This was admitted, even by the Counsel for the Appellant; and if the Jury had said, that the sums of money mentioned in the 4th, 5th, 6th, 7th and 8th findings, were lost to the Bank by such fraudulent use of checks, or such fraudulent entries and omissions, there would be no doubt that the Appellant would be liable for them, to the amount of the penalty of the bond. But, the Jury have not said so. On the contrary, they have said that they were lost by his theft of monies, with which, as Accountant, he had nothing to do.
If it be said, that these violations of duty, in the improper use of checks, would justify at least nominal damages, I reply, that where breaches are assigned, and real damages are given for them, there is no room for the application of the Common Law principle as to nominal damages.
I am of opinion to reverse the Judgment, and to enter it for the debt in the Declaration mentioned, to be discharged by the payment of $3,115 32 cents, with interest thereon from the 1st of January, 1818, till paid, &c.

Ttie foregoing' remarks of Judge G-t-íeen apply to the case of Caldwell v. The Bank.